UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
HOLBROOK REALTY, LLC,

                           Plaintiff,

     -against-

PEERLESS INSURANCE COMPANY,
A&R YOGURT, INC., S.A., *an infant by his
mother and natural guardian, Diane
Angelis*, DIANE ANGELIS, *individually*,
and T. YOUNG'S PAVING, LLC,

                        Defendants.
---------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

18-CV-1005 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint filed in the Supreme Court of the State of New York, County of Suffolk, and later removed to the United States District Court for the Eastern District of New York on the grounds of diversity jurisdiction, Plaintiff Holbrook Realty, LLC ("Plaintiff" or "Holbrook") commenced this action against Defendant Peerless Insurance Company ("Defendant" or "Peerless"), seeking a declaratory judgment that Defendant is obligated to provide liability insurance to Plaintiff in connection with an underlying personal injury lawsuit captioned *Steve Angelis, an infant by his mother and natural guardian, Diane Angelis, et al. v. Holbrook Realty, LLC et al.*, Index No. 11939/2011 (N.Y. Sup. Ct.) (the "Underlying Lawsuit").  *See* Docket Entry ("DE") [1] ("Notice of Removal"); DE [1-1] ("Complaint" or "Compl.").[1]  Presently before the Court, on referral from the Honorable Joan M.

---

[1] Also named in this action as interested parties are A&R Yogurt, Inc. ("A&R"), S.A., *an infant by his mother and natural guardian, Diane Angelis*, Diane Angelis ("Ms. Angelis," and together with S.A., the "Underlying Plaintiffs"), *individually*, and T. Young's Paving, LLC ("Young's," and collectively with

Azrack for Report and Recommendation, are:  (i) Peerless's motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6); and (ii) Holbrook's motion for summary judgment under Fed. R. Civ. P. 56.  *See* DEs [18] – [24].  For the reasons set forth below, the Court respectfully recommends:  (i) denying Defendant's motion to dismiss; and (ii) granting in part and denying in part Plaintiff's motion for summary judgment.  Specifically, the Court recommends that a declaratory judgment requiring Peerless to defend Holbrook in the Underlying Lawsuit be entered, but that a resolution concerning indemnification is premature.

I.   **Background**

   A.   **Relevant Factual Background**

   The   following   facts   are   taken   from   the   parties'   pleadings, declarations/affirmations,   exhibits,   and   respective   Local   Rule   56.1   statements. Unless otherwise noted, these facts are not genuinely in dispute.[2]

   i.   The Lease

   In or around September 1989, Route 347 Corporation ("347"), as landlord, and Vero & Vero Ronkonkoma, Inc. ("Vero"), as tenant, entered into a lease agreement for the premises located at 630 Portion Road, Ronkonkoma, New York (the "Premises"). *See* Compl., Ex. B (the "Lease").  The Lease contains the following relevant provisions:

---

A&R and the Underlying Plaintiffs, the "Interested Parties").  No claims are asserted herein against the Interested Parties, who are merely nominal defendants. *See* Notice of Removal ¶¶10-11.

[2] The Court notes that the majority of Defendant's objections to Plaintiff's purported statements of undisputed material facts merely include a one-word, unsubstantiated denial, and then cite to the same exhibits relied on by Holbrook (most of which were attached to the Complaint). *See, e.g.*, Def.'s Reply 56.1, DE [20-1], ¶¶ 2, 6, 8, 9, 11.  Thus, insofar as Peerless relies on Holbrook's exhibits, the Court assesses those documents to discern the facts contained therein.

- The use and occupation by TENANT of the demised premises shall include … employees' parking areas, service roads, loading facilities, sidewalks and customer care parking areas designated from time to time by LANDLORD….  Lease, Article 2, Use of Additional Areas;

- Tenant will carry, at its own cost and expense, a complete general public liability policy of insurance with a combined single limit of one million dollars for bodily injury … with an umbrella insurance policy with a limit extending above said amounts to two million dollars, and said policies shall name the Landlord as an additional first party insured under the said policies; and such policies shall cover the premises inclusive of sidewalks and parking areas.  *Id.*, Article 24, Liability Insurance with Umbrella – Tenant's Obligation;

- All policies shall name LANDLORD, any person, firms, or corporations designated by LANDLORD, and TENANT as insured, and shall contain a clause that the insurer will not cancel or change the insurance without first giving the LANDLORD ten (10) days prior written notice…. *Id.*, Article 26, Insurance Policies;

- [T]his lease may be assigned and the premises may be sublet, subject to the written consent of LANDLORD …. It is further understood and agreed that notwithstanding one or more assignments … the TENANT and subsequent assigns shall remain responsible for … performance of all the terms and conditions of this Lease ….  *Id.*, Article 57.[3]

- The Lease and the Exhibits attached hereto and by reference made a part hereof constitute the entire agreement between the parties hereto and no portion thereof may be altered, modified, or amended in any manner whatsoever unless same shall be in writing and signed by the parties hereto. *Id.*, Article 69, Entire Agreement;

- Except as herein otherwise provided, the terms and provisions hereof shall be binding upon and shall inure to the benefit of the … successors and permitted assigns, respectively, of LANDLORD and TENANT…. *Id.*, Article 70 Binding Effect.

---

[3] The Lease does not require the *tenant* to consent to assignments by the *landlord*.

On January 20, 1994, the United States of America, who had obtained title to the Premises via forfeiture from 347, sold the Premises to Reynold Blum ("Blum") via a Special Trustee's Quitclaim Deed. *See* Compl., Ex. C. On April 28, 1995, Vero assigned its tenancy interest in the Lease to O.K. Yogurt, Inc. *See id.*, Ex. D. In November 1998, Blum and O.K. Yogurt executed a First Amendment and Ratification of Lease, whereby they extended the leasehold through October 31, 2014 and agreed to various rent increases, with the remaining terms of the original Lease staying in effect. *See id.* On May 26, 2004, O.K. Yogurt assigned the Lease to A&R. *See id.*, Ex. E (the "Assumption Agreement"). Pursuant to the Assumption Agreement, A&R "assume[d] full responsibility for the Lease as if [A&R] signed the Lease originally as Tenant." *Id.* Blum also signed the Assumption Agreement. On July 14, 2006, Blum transferred his rights in the Lease to Plaintiff, who "assume[d] all of the obligations … pursuant to said Lease …" *See id.*, Ex. F. Thus, by virtue of the various assignments and assumptions, Plaintiff and A&R entered a landlord-tenant relationship governed by the Lease. In support of its motion for summary judgment, Holbrook's managing member confirms the foregoing chain of title. *See* Affidavit of Peter Petrakis, DE [19-4].

ii.   <u>The Peerless Insurance Policy</u>

Defendant issued a Custom Protector Insurance Policy to A&R bearing No. CBP 8680679, with an effective period from May 26, 2010 through May 26, 2011. *See* Declaration of Scott W. Driver in Support of Plaintiff's Motion for Summary Judgment ("Driver Decl."), DE [19-1], Ex. 5, DE [19-5], (the "Peerless Policy"). The

Peerless Policy contains commercial general liability coverage with a $1,000,000 per-occurrence limit for the Premises, and covers "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … to which this insurance applies." *See id*. at 155, 165. In addition, under the Peerless Policy, Defendant has "the right and duty to defend the insured against any 'suit' seeking those damages." *Id*. at 165. Within the Custom Protector Liability Extension Endorsement, the following provision contemplates additional insureds:

> G. ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES – AUTOMATIC STATUS WHEN REQUIRED IN LEASE AGREEMENT WITH YOU
>
>> SECTION II – WHO IS AN INSURED is amended to *include as an additional insured any person or organization when [A&R] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.* Such person or organization is an additional insured only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you, subject to the following additional exclusions:
>>
>>> This insurance does not apply to:
>>>
>>> 1. Any "occurrence" which takes place after you cease to be a tenant in that premises.
>>> 2. Structural alterations, new construction or demolition operations performed by or on behalf of any additional insured.
>>> 3. Any person or organization specifically designated as an additional insured by a separate ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES endorsement issued by [Peerless] and made a part of this policy.

*Id*. at 162 (emphasis added). Further, the Peerless Policy contains the following provision concerning alternative insurance:

4.      **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss [Peerless] cover[s] … [Peerless's] obligations are limited as follows:

     a.      **Primary Insuranc**e

     This insurance is primary except when (b) below applies.  If this insurance is primary, [Peerless's] obligations are not affected unless any of the other insurance is also primary….

     b.      **Excess Insurance**

     This insurance is excess over:

          (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

               (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for 'your work';

               (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

               (c) That is insurance purchased by you to cover liability as a tenant for 'property damage' to premises rented to you or temporarily occupied by you with permission of the owner; or

               (d) If the loss arises out of the maintenance or use of aircraft, 'autos,' or watercraft ….

          (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which [A&R has] been added as an additional insured by attachment of an endorsement.

*Id*. at 175.

iii.　　The Travelers Policy

Travelers Indemnity Company ("Travelers") issued a commercial general liability insurance policy to Holbrook bearing No. I-680-6843C209-TCT-10, with an effective period of July 14, 2010 through July 14, 2011.  *See* Affidavit of Janet Trajbar[4] in Support of Plaintiff's Motion for Summary Judgment, attached to the Driver Decl. as Ex. 7, (the "Trajbar Aff."), DE [19-7]; *see also id*. at 5-55 (the "Travelers Policy"). The Travelers Policy contains the following relevant provisions:

**4.　　Other Insurance**

If other valid and collectible insurance is available to the insured for a loss [Travelers] covers … [Travelers'] obligations are limited as follows:

**a.　　Primary Insuranc**e

This insurance is primary except when (b) below applies.  If this insurance is primary, [Travelers's] obligations are not affected unless any of the other insurance is also primary….

**b.　　Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis: … That is available to [Holbrook] when [it] is added as an additional insured under any other policy, including any umbrella or excess policy.

Travelers Policy at 25, 34.  In other words, the Travelers Policy is secondary in a scenario where Holbrook is an additional insured on another applicable policy.

---

[4] Ms. Trajbar is a claim professional familiar with Holbrook's Travelers Policy.  *See* Trajbar Aff. ¶ 1.

iv.     The Underlying Lawsuit and Tenders

The Underlying Lawsuit was filed by the Underlying Plaintiffs on or about April 13, 2011 and alleges that S.A. was injured when he fell in the parking lot of the Premises on November 27, 2010.  *See* Compl., Ex. A (the "Underlying Complaint") ¶¶ 39-40.  Both the Peerless Policy and Travelers Policy were in effect when the Underlying Incident occurred.  *See* Section I(A)(ii)-(iii), *supra*.

By letters dated May 19, 2011, August 23, 2011, October 3, 2016, and October 10, 2017, Travelers tendered Holbrook's defense and indemnification for the Underlying Lawsuit to Peerless and A&R.  *See* Trajbar Aff. ¶ 13; *see also* Driver Decl., Ex. 8 (the "Tender Letters").  To date, Defendant has refused to provide coverage to Plaintiff.  *See* Trajbar Aff. ¶ 14.

**B.     Relevant Procedural History**

Based on the above, Holbrook commenced the instant lawsuit on or about January 23, 2018 in Suffolk County Supreme Court.  *See* Notice of Removal ¶ 1.  On February 15, 2018, the action was removed to this Court on the basis of diversity jurisdiction.  *See* DE [1].[5]  The Complaint asserts a single cause of action seeking,

---

[5] The Notice of Removal states that Peerless is a New Hampshire stock insurance company with a principal place of business in Boston, Massachusetts, and that Holbrook is a limited liability company with a principal place of business in Seaford, NY that has no members domiciled in New Hampshire or Massachusetts.  *See* Notice of Removal ¶¶ 7-9.  Thus, Plaintiff and Defendant are diverse.  The Notice further indicates that the Interested Parties are merely "nominal defendants and/or are defendants fraudulently joined, whose citizenship does not have to be considered for diversity jurisdiction."  *See id.* at 10-11.  The Court agrees that, as nominal defendants, the Interested Parties' citizenship is irrelevant for diversity jurisdiction purposes.  *See Lewis Morris Assocs. v. Admiral Ins. Co.*, No. 04-cv-1757, 2004 WL 1065522, at *1 (S.D.N.Y. May 11, 2004) ("if [defendants] are nominal parties, their citizenship need not be diverse from plaintiff's citizenship, because federal courts disregard the citizenship of nominal parties in assessing whether complete diversity exists …") (citing *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S. Ct. 1779, 1782 (1980) ("a federal court must disregard nominal or formal parties and rest jurisdiction upon the citizenship of real parties to the controversy") (internal citations omitted)).

*inter alia*, a declaratory judgment that Peerless has a duty to defend and indemnify Holbrook in connection with the Underlying Lawsuit. *See generally* Compl. On February 22, 2018, Defendant filed a Pre-Motion Conference Letter, stating its intention to move to dismiss the Complaint pursuant to Rule 12(b)(6) on the grounds that Plaintiff does not qualify as an additional insured under the Peerless Policy by virtue of its lack of privity of contract with A&R. *See* DE [6] ("The PMC Letter"). On March 12, 2018, Holbrook responded to the PMC Letter, indicating that Plaintiff and A&R are in privity as a matter of law in light of the parties' assumptions of the Lease. *See* DE [11]. Judge Azrack held a pre-motion conference on April 12, 2018, after which the parties submitted a proposed briefing schedule for both the contemplated motion to dismiss and Plaintiff's motion for summary judgment. *See* DEs [12] – [14]. Both motions were filed pursuant to the Court's "bundle rule" on October 4, 2018, *see* DEs [18] – [24], and Judge Azrack subsequently referred the motions to this Court for Report and Recommendation. *See* May 6, 2019 Order Referring Motion,

In arguing for dismissal, Peerless contends that the Complaint fails to state a claim because Holbrook cannot qualify as an additional insured under the Peerless Policy considering its lack of privity of contract with A&R. *See generally* Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def.'s Mem."), DE [22-5]. Holbrook opposes the motion to dismiss, arguing that it is in privity of contract with A&R as a matter of law, *see generally* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pltf.'s Opp."), DE [23] at 5-27, and further contends via its cross-motion for summary judgment that, as an additional insured,

9

it is entitled to a declaratory judgment ordering Peerless to defend and indemnify it in connection with the Underlying Lawsuit. *See generally* Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment ("Pltf.'s Mem."), DE [19-10]. In opposing summary judgment, Peerless reiterates it privity argument, and contends that additional factual disputes militate against judgment in Plaintiff's favor. *See generally* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Opp."), DE [20].

## II.   Legal Standards

### A.   <u>Motions to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A complaint "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in a complaint as true and draw all reasonable inferences in the plaintiff's favor. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). The Court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint

10

> as an exhibit or incorporated . . . by reference; (3) matters
> of which judicial notice may be taken; and (4) documents
> upon whose terms and effect the complaint relies
> heavily, *i.e.,* documents that are "integral" to the
> complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation

omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y.

2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the

facts alleged in the complaint, and any document attached as an exhibit to the

complaint or incorporated in it by reference").

## B.   <u>Motions for Summary Judgment</u>

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears

the burden of establishing that there are no issues of material fact such that summary

judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court "is not to weigh the evidence

but is instead required to view the evidence in the light most favorable to the party

opposing summary judgment, to draw all reasonable inferences in favor of that party,

and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361

F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment

should be denied if "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party"). A defendant can demonstrate its entitlement to summary

judgment by pointing to an "absence of evidence" supporting the plaintiff's claim. *See Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (citing *Goenaga v. Mar. of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party"). Thus, if a defendant has pointed to an absence of evidence, "the burden shifts to the non-moving party to produce evidence raising a material question of fact." *Doona*, 680 F. Supp. 2d at 399 (citing *Miner v. Clinton County,* 541 F.3d 464, 471 (2d Cir.2008)).

## III.   Discussion

Applying the standards outlined above, and for the reasons set forth below, the Court respectfully recommends that Peerless's motion to dismiss be denied and that

Holbrook's motion for summary judgment be granted in part and denied in part as detailed herein.[6]

### A.    Privity of Contract

As a threshold matter, the Court concludes that Holbrook and A&R are, as a matter of law, in privity of contract under the Lease.   To that end, Defendant's argument – both in support of its motion to dismiss and in opposition to Holbrook's motion for summary judgment – that a lack of privity renders this action meritless is rejected.

> It is a well-established principle of New York landlord-tenant law that, due to the privity of contract which arises out of a written lease assumption agreement, an assignee of a lease who assumes or agrees to perform the covenants and conditions of the lease generally is liable to the lessor for their performance…. In addition, where the assignee enters an express agreement to assume performance of the obligations in the lease, takes possession of the premises, and holds itself out as the tenant by paying rent, utilities, taxes, etc., New York courts will place the assignee in the same position as the original tenants ….

*Fifty Liberty St., LLC v. Eureka Petroleum, Inc.*, No. 07-cv-20, 2008 WL 3211274, at *4 (W.D.N.Y. Aug. 6, 2008) (collecting cases) (internal quotations omitted); *see also Frankel v. Tremont Norman Motors Corp.*, 21 Misc. 2d 20, 193 N.Y.S.2d 722 (N.Y. Sup. Ct. 1959) ("It is axiomatic that an expressed covenant made by an assignee to assume the lease binds him thereafter by privity of estate as well as privity of contract

---

[6] The Court notes that based upon the parties' almost exclusive reliance on New York law in their motion papers, they have implicitly agreed that New York law governs.   Under such circumstances, the Court need not undertake a choice-of-law analysis and applies New York law to its analysis.   *See Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 274 n. 7 (E.D.N.Y. 2014) (internal citation omitted).

with the landlord"), *aff'd*, 10 A.D.2d 680, 197 N.Y.S.2d 576 (1st Dep't 1960), *aff'd*, 8 N.Y.2d 901, 204 N.Y.S.2d 146 (Mem) (1960) (internal citations omitted).

Here, the various assignments and assumptions of the Lease – on both the landlord and tenant side – create privity of contract between Holbrook and A&R. Specifically, in the Assumption Agreement, whereby A&R was assigned the Lease from O.K. Yogurt with Blum's consent, A&R explicitly agreed to "assume[] full responsibility for the Lease as if [A&R] signed the Lease originally as Tenant." *See* Assumption Agreement.  In addition, when Blum transferred his rights in the Lease as landlord, Plaintiff also "assume[d] all of the obligations … pursuant to said Lease." *See* Compl., Ex. F.  Although A&R did not sign off on this assignment as Blum did when it became the tenant, such action was not required by the Lease.  *See* Lease, Article 57.  Accordingly, Holbrook and A&R entered a landlord-tenant relationship whereby privity of contract was formed as if these entities were the original signatories to the Lease.

Peerless's contention that Holbrook and A&R lack privity because they never co-signed the same document misses the mark.  In support of this argument, Defendant erroneously relies on a line of inapposite cases concerning construction contracts whereby a property owner and/or general contractor were, as third-party beneficiaries, not considered additional insureds under a subcontractor's insurance policy by virtue of intermediary agreements breaking the chain of privity.  *See* Def.'s Mem. at 9-11.

In *Cincinnati Ins. Co. v. Harleysville Ins. Co.*, the principal case relied on by Peerless, the Second Circuit held that there was no contractual privity between a sub-subcontractor and property owner or general contractor such that the sub-subcontractor's insurance policy did not confer additional insured status on them. *See* 709 F. App'x 71 (2d Cir. 2017) (Summary Order).   There, the property owner, the University of Rochester Medical Center/Strong Memorial Hospital ("UR"), entered into a HVAC repair agreement with general contractor LeChase Construction Corp. and LeChase Construction Services LLC (together, "LeChase"), who then entered into a subcontract with J.T. Mauro Co. ("Mauro"), who, in turn, entered into a sub-subcontract with Kimmel Company, Inc. ("Kimmel").  *See id*. at 73.   Thus, the only party with a written contract with Kimmel was Mauro.   An employee of Kimmel was injured while working on the HVAC project, and sued Mauro, LeChase, and UR.  *See id*. at 72-73.   UR and LeChase sought coverage from Kimmel's insurance carrier, arguing that they were additional insureds as third-party beneficiaries of the Mauro-Kimmel sub-subcontract.  *See id*. at 73.   The privity endorsement clause in Kimmel's insurance policy mirrored the provision at issue in this action – namely, the language stating that a party is considered an additional insured "when [the named insured] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [the named insured's] policy."  *See id*. at n. 1.   The court held that UR and LeChase were not entitled to coverage from Kimmel's carrier because neither entity had entered into a contract directly with Kimmel.  *See id*. at 73 (New York courts "have consistently

15

interpreted language identical to [the relevant endorsement] to require contractual privity, so that there must be a written agreement between the insured and the organization seeking coverage to add that organization as an additional insured") (internal quotation omitted) (collecting cases).

Similarly, in *AB Green Gansevoort, LLC v. Peter Scalamandre & Sons, Inc.*, relied on by Defendant and the Second Circuit in *Cincinnati Ins. Co.*, the court held that the lack of a written agreement between the named insured (vendor) and the property owner (who employed a general contractor, which, in turn hired a subcontractor, who then purchased supplies from the named insured vendor), barred that property owner from inclusion as an additional insured under the same privity endorsement.  *See* 102 A.D.3d 425, 961 N.Y.S.2d 3 (2d Dep't 2013).  The remaining cases relied on by Peerless stand for the same proposition:  that a property owner who is in privity with a general contractor, but not that general contractor's subcontractor, is not entitled to coverage as an additional insured based on privity endorsements similar or identical to the clause at issue in this action.  *See, e.g.*, *Samsung Fire & Marine Ins. Co. v. RLI Ins. Co.*, No. 655169/2016, 2018 WL 310322 (N.Y. Sup. Ct. 2018) (holding that plaintiff property owners were not considered additional insureds because only a separate non-party entity was in privity with the named insured subcontractor).  Defendant's assertion that the relevant contract in *Samsung* was assigned, rendering it analogous to the instant action, fails for multiple reasons.  *See* Def.'s Mem. at 13-14.  Initially, the agreement therein was subject to an anti-assignment clause rendering any purported transfer invalid.  *See Samsung Fire &*

16

*Marine Ins. Co.*, 2018 WL 310322 at *4-5.  Moreover, assuming *arguendo* that an assignment was permissible, the portion of the contract that was transferred was unrelated to the construction project at issue, but instead concerned the management of a property located at a different location.  *See id*. at *5 ("The purported assignment agreement … is not relevant to the subject case and concerns a different insured location").  Conversely, here, the Lease was duly assigned and assumed by the relevant parties and covered the Premises where S.A.'s alleged injuries occurred. Accordingly, Peerless's reliance on *Samsung* is similarly misplaced.

The instant matter is distinguishable from the foregoing line of case law because, here, there is no intermediary contract breaking the chain of privity.  In each of the cases relied on by Defendant, a subcontract separated the named insured from the entity seeking coverage as a third-party beneficiary.  Here, however, as discussed above, Holbrook and A&R were in direct privity with each other by virtue of the assignments and assumptions obligating them to be bound by the same Lease.  *See Fifty Liberty St., LLC*, 2008 WL 3211274, at *4.  None of the cases relied on by Peerless concern landlord-tenant contracts that were assigned to or from the entity seeking coverage.  Accordingly, the Court concludes that Holbrook and A&R are in privity of contract via the Lease.

## B.  Holbrook's Qualification as an Additional Insured

Having determined that Holbrook and A&R are in privity of contract, the Court next concludes that Holbrook automatically qualifies as an additional insured under the Peerless Policy.

"The party claiming insurance coverage bears the burden of proving entitlement … and is not entitled to coverage if not named as … an additional insured on the face of the policy." *Nat'l Abatement Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 33 A.D.3d 570, 570-71, 824 N.Y.S.2d 230, 232 (1st Dep't 2006); *see Moleon v. Kreisler Borg Florman Gen. Const. Co.*, 304 A.D.2d 337, 339, 758 N.Y.S.2d 621, 623 (1st Dep't 2003).  Because "an insurance policy is a contract between the insurer and the insured[,]" the nature and extent of coverage "is controlled by the relevant policy terms, not by the terms of the underlying trade contract that required the named insured to purchase coverage." *Bovis Lend Lease LMB v. Great Am. Ins. Co.*, 53 A.D.3d 140, 145, 855 N.Y.S.2d 459, 464 (1st Dep't 2008).  "The unambiguous terms of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such terms is a question of law for the court." *Viznitz v. Church Mut. Ins. Co.*, 132 A.D.3d 853, 854, 18 N.Y.S.3d 168, 170 (2d Dep't 2015) (internal citations omitted); *see also Rosano v. Freedom Boat Corp.*, No. 13-cv-842, 2015 WL 4162754, at *3 (E.D.N.Y. July 8, 2015) ("Construction of an insurance policy is governed by the rules of construction applicable to contracts generally . . . and an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract") (internal quotation and citations omitted). "Where an agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity." *Viznitz*, 132 A.D.3d at 854, 18 N.Y.S. at 170 (internal quotation and citations omitted).

Here, the Peerless Policy automatically includes as an additional insured "any … organization when [A&R] and such … organization have agreed in writing in a contract or agreement that such … organization be added as an additional insured…" *See* Peerless Policy at 162. Further, the Lease requires A&R to "name the Landlord as an additional first party insured" on its liability insurance policy. *See* Lease, Article 24. Thus, the text of the Lease and Peerless Policy leaves no doubt that Holbrook is deemed an additional insured by virtue of its role as landlord.

To that end, Peerless's argument that Holbrook's failure to inform A&R that it took over as landlord such that A&R could cause Plaintiff to be named as an additional insured is without merit. *See* Def.'s Mem. at 15. The additional insured status is conferred automatically by operation of the insurance requirements of the Lease. *See* Lease, Article 24. Notably, there is no allegation that the prior landlords were explicitly named as additional insureds, rather than them too gaining that status automatically. Instead, the Peerless Policy provides blanket additional insured coverage to any organization to whom A&R is obligated to secure coverage for (*i.e.*, its landlord). *See* Peerless Policy at 162. As a result, there was no need to obtain an additional rider formally substituting Holbrook for Blum, considering Blum was never identified by name. Similarly, Defendant's contention that the Peerless Policy prohibited A&R from transferring its rights therein absent Peerless's consent is rejected. *See* Def.'s Mem. at 15-16. There is no allegation that A&R or anyone else assigned any insurance rights afforded by the Peerless Policy to any third-party. Instead, it was the *Lease* that was assigned and assumed on multiple occasions,

19

whereby the language of the Peerless Policy continued to provide the same coverage to A&R and its landlords.  Finally, Defendant's argument that the Lease's merger clause forbids alteration of the Lease absent a written agreement, *see* Lease, Article 69, similarly misses the mark.  *See* Def.'s Mem. at 17.  There is nothing in the record to suggest that the Lease was modified, aside from what was described above (*i.e.* a writing altering the duration and rent).  Instead, the entire agreement was assigned in a manner that explicitly stated that its terms and provisions would be binding on any successors and assigns.  *See* Lease, Article 70.

Accordingly, because Plaintiff and A&R are in privity of contract as a matter of law and since the Peerless Policy, when read in conjunction with the Lease, decidedly insures Holbrook, the Court respectfully recommends denying Defendant's motion to dismiss.

### C.  The Duty to Defend and Indemnify

Having determined that Holbrook is in privity with A&R and, in turn, an additional insured under the Peerless Policy, the Court turns to the remaining issues presented in Holbrook's summary judgment motion – namely, whether Holbrook is entitled to coverage in connection with the Underlying Lawsuit.  In this regard, the Court concludes that Defendant has a duty to defend Plaintiff, but that a ruling with respect to indemnity is premature.

### i.  The Duty to Defend

It is well-settled under New York law, that "an insurer's duty to defend is exceedingly broad and an insurer will be called upon to provide a defense whenever

the allegations of the complaint suggest a reasonable possibility of coverage." *373 Wythe Realty, Inc. v. Indian Harbor Ins. Co.*, No. 09-cv-1247, 2010 WL 1930256, at *2 (E.D.N.Y. May 11, 2010) (quoting *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302, 305 (2007)) (internal quotation omitted). "If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82-83 (2d Cir. 2013) (quoting *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443, 749 N.Y.S.2d 456, 459 (2002)). The "exceedingly broad" duty to defend "applies equally to additional insureds and named insureds." *Regal Const. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 37, 904 N.Y.S.2d 338, 340-41 (2010).

Here, it is evident that: (i) the leased premises included the parking lot; (ii) A&R was required to procure liability insurance for personal injuries of the nature alleged in the Underlying Lawsuit, and that such insurance had to encompass the parking areas; and (iii) A&R was obligated to include Holbrook (or whomever its current landlord was) as an additional insured. *See* Lease, Articles 2, 24, 26. In accordance therewith, the Underlying Complaint suggests a reasonable possibility of coverage such that the Peerless Policy requires Defendant to defend Plaintiff in the Underlying Lawsuit. Specifically, the Peerless Policy explicitly obligates Peerless to defend its insureds against lawsuits seeking damages for bodily injuries sustained on the Premises, which includes the parking lot. *See* Peerless Policy at 155, 165; Lease, Article 2. In the Underlying Lawsuit, S.A. alleges that he sustained bodily injuries

while in the parking lot of the leased Premises.  *See* Underlying Complaint ¶¶ 39-40. Thus, the Underlying Complaint contains allegations sufficient to suggest an incident that is covered by the Peerless Policy.

Defendant's argument that A&R did not lease the parking lot of the Premises, rendering it outside the scope of insurance coverage, *see* Def.'s Opp. at 15-20, is without merit as that position is directly controverted by the language of the Lease. To that end, Peerless's contention that summary judgment must be denied because Holbrook failed to attach Exhibit A of the Lease, which purportedly illustrates the demised premises, is similarly rejected.  *See* Def.'s Opp. at 6, 15-16, n. 2, 3.  Pursuant to the Lease, parking areas are both included in the demised Premises and required to be insured.  *See* Lease, Articles 2, 24.  And Defendant concedes that "[t]he accident alleged in the Underlying [Lawsuit] occurred in the parking lot ...."  *Id*. at 15.  Thus, the cases relied on by Defendant in this regard are inapplicable, as they concern situations where the underlying accidents occurred outside the scope of the leased premises.  *See id*. at 15-18, *see also, e.g.*, *Rensselaer Polytechnic Inst. v. Zurich Am. Ins. Co.*, 176 A.D.2d 1156, 1157, 575 N.Y.S.2d 598 (3d Dep't 1991) (leased premises did not include adjacent walkways where the underlying plaintiff was allegedly injured); *Greater New York Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, No. 01-cv-10632, 2003 WL 22149522 (S.D.N.Y. Sept. 17, 2003) (leased premises did not include roof where alleged injury occurred); *Atl. Ave. Sixteen AD, Inc. v. Valley Forge Ins. Co.*, 150 A.D.3d 1182, 1184 56 N.Y.S.3d 207 (2d Dep't 2017) (finding no duty to defend where the "[lessee] leased only a portion of the building from [the property owner], not the

parking lot where the accident occurred"); *Chappaqua Cent. Sch. Dist. v. Philadelphia Indem. Ins. Co.*, 148 A.D.3d 980, 48 N.Y.S.3d 784 (2d Dep't 2017), *leave to appeal denied*, 29 N.Y.3d 913 (2017) (denying coverage where the purported accident occurred on a staircase that was not included in the leased premises). Accordingly, Peerless's contention that Holbrook's failure to file the Lease's exhibit defeats summary judgment fails, in light of the parties' agreement that the S.A.'s purported accident occurred in the Premises' parking lot and the Lease's unequivocal inclusion of that portion of the property.

The Court further rejects Defendant's argument that Plaintiff's claim is barred because Travelers, rather than Holbrook is "the real party in interest." *See* Def.'s Opp. at 20-22 (citing Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest")). Peerless contends that because Holbrook's defense of the Underlying Lawsuit has thus far been paid for by Travelers, Plaintiff has no financial stake in the outcome therein. *See id.* at 22.[7] This position misses the mark as it has no bearing on Defendant's obligation to provide Plaintiff's defense in accordance with the Peerless Policy. Travelers is not a party to the Lease, nor is it included in the Peerless Policy, and thus Holbrook itself is the entity entitled to relief from Defendant. *See Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003) ("[Rule 17(a)] means that an 'action must be brough by the person who, according to the governing substantive law, is entitled to enforce the right.'") (quoting 6A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1543, at 334 (2d

---

[7] Defendant fails to substantiate its assertion that "Holbrook did not defend or pay for the defense costs.  Travelers provided the defense." *See* Def.'s Mem. at 22.

ed.1990)).  In this regard, *Cont'l Cas. Co. v. Am. Home Assur. Co.*, No. 05-cv-7874, 2008 WL 1752231, at *3 (S.D.N.Y. Apr. 14, 2008), relied on by Defendant, is inapplicable.  In that case, the Court held that in a subrogation action where an insurer has paid the entirety of the insured's losses, the *insured* itself is not a necessary party to that action.  Here, Peerless's obligations are to Holbrook, not Travelers, and as such Plaintiff is the party with an interest in this litigation regardless of where the sums paid by Defendant end up.  Peerless fails to cite any authority indicating that an insured cannot sue to enforce its rights to insurance coverage under the circumstances presented herein.

Finally, Peerless's contention that the Court cannot determine priority of coverage is similarly rejected.  *See* Def.'s Opp. at 22-23.  Relying on *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 716, 840 N.Y.S. 302, 307 (2007), Defendant argues that Travelers' absence from this action prevents a finding concerning priority of coverage.  In *BP Air Conditioning Corp.*, however, the court concluded that a priority determination could not be made, *inter alia*, because "no other relevant policies [were] submitted."  *Id.*  Here, on the other hand, the Travelers Policy was submitted in support of Plaintiff's motion, and explicitly states that its coverage is excess over any other insurance that is available to Holbrook as an additional insured.  *See* Travelers Policy at 25, 34.  Conversely, the Peerless Policy contains no indication that it would be secondary to the Travelers Policy, and Defendant advances no argument to that effect.  *See* Peerless Policy at 175.  Thus, the Court concludes that the Peerless Policy provides primary coverage to Holbrook.

24

Accordingly, the allegations contained in the Underlying Complaint, when read in conjunction with the Lease and Peerless Policy, obligate Peerless to defend Holbrook in connection with the Underlying Lawsuit, and the Court respectfully recommends granting Plaintiff's motion for summary judgment in this regard.

### ii.    The Duty to Indemnify

Finally, Peerless contends that – regardless of whether it is obligated to defend Plaintiff – a declaration that it has to *indemnify* Holbrook is premature given the lack of a liability determination in the Underlying Lawsuit. *See* Def.'s Opp. at 23-25. The Court agrees. "The duty to indemnify is unquestionably narrower than the duty to defend." *Specialty Nat. Ins. Co. v. English Bros. Funeral Home*, 606 F. Supp. 2d 466, 472 (S.D.N.Y. 2009) (citing *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 669, 439 N.Y.S.2d 858, 861 (1981). As a result, courts in the Second Circuit often dismiss the indemnification portions of declaratory judgment actions where, as here, there has been no determination as to liability in an underlying state court action. *See, e.g.*, *Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 196 (E.D.N.Y. 2018) ("where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties, it is entirely appropriate for a district court to dismiss a declaratory judgment action") (citing *Westport Ins. Corp. v. Hamilton Wharton Grp. Inc.*, 483 F. App'x 599, 604 (2d Cir. 2012) (internal quotations, brackets, and ellipses omitted); *see also Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012) ("An action to declare the insurer's duty to indemnify is premature and does not lie where the

complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action") (internal quotations and citations omitted).

Here, the record is devoid of evidence indicating whether Holbrook has been found liable in the Underlying Lawsuit.[8] Thus, there currently is no basis for Peerless to indemnify Plaintiff. *Cf. Lighton Indus., Inc.*, 348 F. Supp. 3d at 196 ("At this time, there is no liability for which defendants could indemnify plaintiffs"). Moreover, the outcome of the Underlying Lawsuit will likely determine the extent to which Holbrook is liable to the Underlying Plaintiffs. Specifically, at issue in the Underlying Lawsuit is likely whether Holbrook had any responsibility concerning maintenance of the Premises such that it could be held liable therein. If Holbrook is absolved of liability in state court, then it necessarily follows that it will have no basis to seek indemnity. In addition, the Underlying Complaint alleges that Young's was hired "to perform certain asphalt paving work" at the Premises, and that such work was performed negligently, leading to S.A.'s injuries. *See* Underlying Complaint ¶¶ 34-36, 40. Although it is unclear based on the record before this Court whether Young's was hired by Holbrook or A&R, and, in turn, whether the Peerless Policy's exclusion for "[s]tructural alterations, new construction or demolition operations performed by or on behalf of any additional insured," Peerless Policy at 162, might

---

[8] The Court notes that nominal defendant Young's wrote the Court on May 23, 2019 stating that the Underlying Lawsuit was settled in November 2018. *See* DE [26]. This letter contains no information explaining the substance of the purported resolution.

apply, this issue is appropriate for adjudication in the Underlying Lawsuit. And although this uncertainty is not enough to overcome the broadly construed duty to defend, it further militates against a finding concerning the ultimate duty to indemnify at this juncture.

On Reply, Plaintiff acknowledges the distinction between the duties to defend and indemnify. *See* Plaintiff's Reply Memorandum of Law in Support of its Motion for Summary Judgment ("Pltf.'s Reply"), DE [21], at 13-14 (acknowledging that "an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course"). Nevertheless, Holbrook appears to argue that the issue of indemnification is ripe for adjudication. *See id*. In asserting this position, Plaintiff conflates a potential contractual provision for *A&R* to indemnify Holbrook with whether the *Peerless Policy* requires indemnification, and indeed Holbrook completely overlooks Defendant's argument concerning the separate duties to defend and indemnify within the purview of the Peerless Policy. *See id*. In short, Plaintiff fails to advance any coherent arguments as to why a declaration concerning indemnification is ripe.

Accordingly, the Court respectfully recommends denying without prejudice the portion of Plaintiff's summary judgment motion seeking a declaration that Peerless is obligated to indemnify Holbrook for any damages award rendered against it in the Underlying Lawsuit, but granting leave to renew the motion once it becomes ripe.

## IV.    Conclusion

For the reasons set forth above, the Court respectfully recommends: (i) denying Defendant's motion to dismiss; and (ii) granting in part and denying in part Plaintiff's motion for summary judgment. Specifically, the Court recommends that a declaratory judgment requiring Peerless to defend Holbrook in the Underlying Lawsuit be entered, but that a resolution concerning indemnification is premature.

## V.    Objections

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:      Central Islip, New York
            August 5, 2019                   /s/ Steven I. Locke
                                             STEVEN I. LOCKE
                                             United States Magistrate Judge